**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**


**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      **vs.**                           **Case No. 3:15-cv-00371**

**SPECTRUM BRANDS, INC.,**
**a Delaware corporation,**

      **Defendant.**

_____/

**COMPLAINT FOR CIVIL PENALTIES**
**AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff, United States of America ("United States"), by its undersigned attorneys, alleges:

INTRODUCTION

1.     This action relates to Black & Decker SpaceMaker Under-the-Cabinet Coffeemakers (the "Coffeemakers") that were imported and distributed to consumers by Spectrum Brands, Inc., and its former subsidiary, Applica Consumer Products, Inc., with which Spectrum merged in 2014 (collectively "the companies"). The companies failed to timely report to the U.S. Consumer Product Safety Commission (the "CPSC" or "Commission") that the plastic handle on the Coffeemaker's glass carafe could detach suddenly during use, posing a burn and laceration hazard to consumers. Beginning in or around 2009, the companies received hundreds of complaints from consumers regarding carafe handles breaking while in use. Notwithstanding their actual and presumed knowledge of the nature and number of incidents and the potential seriousness of the resulting injuries, the companies never reported this information

to the CPSC until April 2012.  In addition, the companies later continued to sell, offer for sale, or distribute in commerce the recalled Coffeemakers.

2.      The United States brings this action under the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2089, seeking civil penalties and injunctive relief against Defendant, because Defendant knowingly failed to immediately report to the CPSC upon receiving information that reasonably supported the conclusion that the Coffeemakers contained a defect that could create a substantial product hazard and created an unreasonable risk of serious injury.  The United States also seeks civil penalties and injunctive relief against Defendant for the sale, distribution or importation of recalled products.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a) and 15 U.S.C. § 2071(a).  Venue in this District is proper under 28 U.S.C. §§ 1391(b), (c), and 1395(a).

## DEFENDANT

4.      Spectrum Brands, Inc. ("Spectrum"), is a corporation located in Middleton, Wisconsin, existing under the laws of the State of Delaware.  Spectrum is a wholly owned subsidiary of SB/RH Holdings, LLC.

5.      Applica Consumer Products, Inc. ("Applica"), was a corporation located in Miramar, Florida, which existed under the laws of the State of Florida.  In or around June 2010, Spectrum acquired Russell Hobbs Inc., of which Applica was a wholly owned subsidiary. Applica became a wholly owned subsidiary of Spectrum.  In or around November 2014, Spectrum and Applica merged, with Spectrum being the surviving corporation.  As part of the merger, Spectrum assumed all assets and liabilities of Applica.

2

6.      At all relevant times hereto, the companies conducted business in the Western District of Wisconsin related to the manufacture, importation, distribution, and sale of the Coffeemakers.

7.      The companies were the manufacturers of the Coffeemakers, as defined in 15 U.S.C. § 2052(a)(11).  A "manufacturer" includes any person who imports a consumer product. *Id.*

8.      The Coffeemakers were manufactured and distributed for sale to consumers:  (a) for use in or around a permanent or temporary household or residence, in recreation; and (b) for the personal use, consumption, or enjoyment of a consumer in or around a permanent or temporary household or residence, in recreation, or otherwise.

9.      Each Coffeemaker is a "consumer product" as that term is defined in 15 U.S.C. § 2052(a)(5).

## CONSUMER PRODUCT SAFETY ACT

10.      The CPSC is an independent federal agency created to protect the public against unreasonable risks of injury from consumer products.  The CPSC enforces the CPSA.  The principal offices of the CPSC are at 4330 East West Highway, Bethesda, Maryland, 20814.  16 C.F.R. § 1000.4.

11.      Under the CPSA, every manufacturer or distributor of a consumer product that is distributed in commerce is obligated immediately to notify the CPSC of certain events.  15 U.S.C. § 2064(b).

12.      First, a manufacturer of a consumer product distributed in commerce "who obtains information which reasonably supports the conclusion that such product . . . contains a defect which could create a substantial product hazard" must immediately inform the CPSC

unless the manufacturer has actual knowledge that the Commission has been adequately

informed of the defect.  15 U.S.C. § 2064(b)(3).  The CPSA defines "substantial product hazard"

as a product defect that "creates a substantial risk of injury to the public."  15 U.S.C. §

2064(a)(2).

13.     Second, a manufacturer of a consumer product distributed in commerce "who

obtains information which reasonably supports the conclusion that such product . . . creates an

unreasonable risk of serious injury or death" must immediately inform the CPSC unless the

manufacturer has actual knowledge that the Commission has been adequately informed of the

risk.  15 U.S.C. § 2064(b)(4).  The Commission has defined "serious injury" to include any

significant injury, including injuries necessitating medical or surgical treatment.  16 C.F.R. §

1115.6(c).

14.     One purpose of the reporting requirement is to protect the public against

unreasonable risks of injury from consumer products.  Companies must report "immediately" to

enable the CPSC to take action to address the hazard or risk by, for example, implementing a

product recall.  Under the CPSC's regulations, "immediately" means "within 24 hours" after a

company has obtained the requisite information regarding a defect or unreasonable risk.  16

C.F.R. § 1115.14(e).  A firm should not wait for serious injury to occur before reporting.  16

C.F.R. § 1115.6(a).

15.     Failing to furnish information required by 15 U.S.C. § 2064(b) is a prohibited act

under the CPSA.  15 U.S.C. § 2068(a)(4).  The CPSA also prohibits any person to "sell, offer for

sale, manufacture for sale, distribute in commerce, or import into the United States any consumer

product . . . subject to a voluntary corrective action taken by the manufacturer, in consultation

with the Commission, of which action the Commission has notified the public. . .," such as a recall.  15 U.S.C. § 2068(a)(2)(B).

16.     Any person who knowingly violates 15 U.S.C. § 2068 is subject to civil penalties. 15 U.S.C. § 2069(a)(1).  The CPSA defines "knowingly" as "(1) the having of actual knowledge, or (2) the presumed having of knowledge deemed to be possessed by a reasonable [person] who acts in the circumstances, including knowledge obtainable upon the exercise of due care to ascertain the truth of representations."  15 U.S.C. § 2069(d).

<u>FACTS</u>

*The Coffeemakers*

17.     The Coffeemakers were manufactured in China from in or around January 2008 until in or around April 2012.  Applica imported approximately 150,000 of the Coffeemakers and distributed them to retailers throughout the United States.

18.     The Coffeemaker is a Black & Decker brand 12-cup coffeemaker designed to mount under a cabinet.  The 12-cup coffee pot/carafe is glass with a molded handle the same color as the machine and a silver metallic bracket running around the glass near the bottom.

*Defendant's Knowledge of the Defective and Hazardous Coffeemakers*

19.     On or about February 22, 2009, a consumer notified Applica that her husband's hand was burned when the handle broke on their carafe while he was pouring coffee.  The consumer offered to send the carafe to Applica, stating that "your company should look at it.  It is a defect."

20.     On or about March 17, 2009, a consumer informed Applica that he was burned slightly on his hand when the carafe handle broke away and coffee poured out.  The consumer stated that "luckily he did not have a full pot of coffee or he would have been seriously injured."

21.     On or about March 27, 2009, Applica performed a "returned product analysis report" on a carafe returned because the consumer said the handle "broke away from the carafe" of the Coffeemaker. The report summary stated: "The material thickness of this catch, the strength of the boss and the plastic material brittleness may be contributing factors in this failure."

22.     On or about April 9, 2009, Applica initiated an engineering change request to strengthen the top of the handle on the carafe of the Coffeemaker.

23.     On or about April 16, 2009, Applica performed a "returned product analysis report" on a carafe returned because the consumer said the "handle fell off the carafe spilling coffee all over her and the counter."

24.     On or about April 28, 2009, a consumer informed Applica that she was burned on her hand, stomach, and legs when the handle separated from the carafe while it was full of hot coffee.  The consumer said the coffee also spilled on her dog.  The initial complaint indicated that the consumer did not see a doctor; subsequently, on or about May 7, 2009, the consumer told Applica that she had to seek medical attention.

25.     In or around May 2009, Applica's manufacturer in China started producing new carafes with the redesigned handle.  However, Applica continued to distribute the older carafes with newly manufactured Coffeemakers until it exhausted its entire inventory of the defective carafes.

26.     On or about July 10, 2009, a consumer informed Applica that the handle broke away from her carafe while it was full of coffee.  She told Applica that the coffee splashed "all over her counter and onto her as well."  The consumer stated that the situation posed a "big safety concern."

27.      On or about July 13, 2009, a consumer contacted Applica to report that the handle broke from the top rim of her carafe as she was pouring coffee.  The consumer stated that she was burned on her hand and arm.

28.      On or about September 30, 2009, a consumer reported to Applica that the handle snapped off his carafe.  He told the company that "this is very dangerous" and asked whether the Coffeemaker had been recalled.

29.      On or about October 21, 2009, a consumer reported to Applica that the entire handle separated from her carafe, causing hot coffee to spill and burn her hand.

30.      On or about October 26, 2009, a consumer reported to Applica that her carafe handle broke.  She stated that it "almost gave way with a full pot of coffee.  Very dangerous!" The consumer asked for a replacement and said "[t]his carafe should be recalled because of burn danger!!!"

31.      On or about December 28, 2009, a consumer informed Applica that the handle had come off of his carafe.  On or about February 2, 2010, the same consumer notified Applica that he received the replacement carafe, but he was "very scared the handle would break and he doesn't want coffee to spill on him or someone else."

32.      On or about April 20, 2010, a consumer notified Applica that the handle broke away from the top lip of her carafe.  The consumer said she caught the partially full carafe as it fell, but in doing so received burns to her hand and arm.

33.      On or about June 18, 2010, a consumer notified Applica that the handle on her carafe had broken, and that this was her second carafe with the same problem.  The same consumer reported her first broken carafe handle to Applica in January 2010.  After the second

7

carafe broke, the consumer stated that she felt the product was dangerous.  The consumer reported a third broken handle to Applica on or about February 2, 2012.

34.     On or about September 10, 2010, a consumer reported to Applica that the handle broke from the top of his carafe.  The consumer stated that "coffee went all over" and burned him and his wife.

35.     On or about November 18, 2010, a consumer reported to Applica that a portion of the carafe handle broke, spilling coffee on his wife's leg and causing a minor burn.  The consumer wrote, "I do consider this a safety situation that has to be addressed."

36.     On or about January 13, 2011, a consumer reported to Applica that he had received four replacement carafes for the Coffeemaker and all four of the handles had split.  The consumer said that "something needs to be done to correct this problem" and that his wife had "dumped hot coffee on her legs."

37.     On or about January 31, 2011, a consumer reported to Applica that the handle broke away from his replacement carafe, which he received after the handle broke off of his first carafe.  The consumer stated that he and his wife both received burns on their legs from hot coffee spilling out of the carafe, and that he was seeking compensation for the burns.

38.     On or about February 28, 2011, a consumer reported to Applica that the handle on the carafe split apart with a full pot of hot coffee inside.  The consumer said that "luckily no one was burned but this is a seriously defective product!"

39.     On or about October 20, 2011, a consumer notified Applica that the handle came off her second carafe, which was the replacement she received when the handle came off her first carafe the previous April.  The consumer told Applica that the "unit is a scalding hazard."

8

40.     In or around March 2012, Applica was served with a class action complaint.  The plaintiffs alleged that the Coffeemaker was improperly designed because the handle detached from the glass carafe at a time when the carafes are generally full of hot coffee, thus posing a serious safety risk to consumers.

41.     Despite having knowledge of the defective Coffeemaker and the risk of the handle breaking while the carafe was full of hot coffee, Defendant did not submit any information to the CPSC regarding the incidents and injuries caused by the defect and risk prior to April 3, 2012.

*Report and Recall*

42.     On April 3, 2012, Applica submitted a report regarding the Coffeemaker pursuant to 15 U.S.C. § 2064(b) to the CPSC.  On April 27, 2012, Applica submitted an amended and supplemental report pursuant to 15 U.S.C. § 2064(b) to the CPSC.   By April 27, 2012, Applica had received approximately 1,600 reports of the handle splitting, breaking, or separating from the carafe of the Coffeemaker, including more than 60 reports of related burns.

43.     Before April 27, 2012, the CPSC had not been fully and adequately informed that the Coffeemaker contained a defect or defects that could create a substantial product hazard or that the Coffeemaker created an unreasonable risk of serious injury.

44.     On June 1, 2012, Applica and the CPSC issued a joint press release announcing a recall of the Coffeemakers and telling purchasers of the Coffeemaker to immediately stop using the Coffeemakers and contact Applica for a free replacement coffee pot/carafe.  The remedy for the recall subsequently was changed to request that consumers stop using the Coffeemakers and contact Applica for a full refund.

*Defendant's Knowledge of the Sale, Distribution and Importation
of the Recalled Coffeemakers*

45.     From on or about June 1, 2012, to in or around February 2013, Applica sold,
offered for sale, distributed in commerce or imported into the United States the recalled
Coffeemakers.

46.     On or about June 28, 2013, Applica reported to the CPSC that several hundred of
the recalled Coffeemakers had been inadvertently sold to retailers.

47.     On or about July 22 and 25, 2013, Applica submitted additional information to the
CPSC stating that some of these recalled Coffeemakers were sold after the recall was announced
on June 1, 2012.

48.     On August 15, 2013, Applica and the CPSC issued a joint press release
announcing the recall of about 641 of the Coffeemakers that were sold after the June 1, 2012,
recall.

*Defendant's Ongoing Activities*

49.     Defendant has not implemented and maintained a reasonable and effective
program or system for complying with the reporting requirements of the CPSA and related
regulations and the CPSA's prohibition on the sale, distribution or importation of recalled
products.

50.     There is a reasonable likelihood that Defendant will continue to violate the CPSA
reporting requirements and prohibition on the sale, distribution or importation of recalled
products.

## COUNT I

51.     Paragraphs 1-50 are incorporated by reference and realleged as if set forth fully
herein.

10

52.     Separately as to each individual Coffeemaker imported, distributed, offered for sale or sold in commerce, Defendant knowingly failed to immediately inform the CPSC upon obtaining information that reasonably supported the conclusion that the Coffeemaker contained a defect or defects, including but not limited to, a defect or defects in design, manufacturing, testing, instructions, warnings, and/or hardware that could create a substantial product hazard, (*i.e.*, a defect or defects that could create a substantial risk of injury to the public) in violation of 15 U.S.C. §§ 2064(a)(2), (b)(3) and 2068(a)(4).  These violations continued from the time Defendant obtained the information regarding the defect(s) until it finally furnished adequate information regarding the defect(s) to the CPSC.

## COUNT II

53.     Paragraphs 1-50 are incorporated by reference and realleged as if set forth fully herein.

54.     Separately as to each individual Coffeemaker imported, distributed in commerce, offered for sale, or sold, Defendant knowingly failed to immediately inform the CPSC upon obtaining information that reasonably supported the conclusion that the Coffeemaker created an unreasonable risk of serious injury, in violation of 15 U.S.C. §§ 2064(b)(4) and 2068(a)(4). These violations continued from the time Defendant obtained the information regarding the unreasonable risk of serious injury and until it finally furnished adequate information regarding the unreasonable risk of serious injury to the CPSC.

## COUNT III

55.     Paragraphs 1-50 are incorporated by reference and realleged as if set forth fully herein.

56.     Defendant knowingly offered for sale, sold, distributed in commerce, or imported into the United States individual recalled Coffeemakers after the June 1, 2012, recall that was announced by Defendant and the CPSC, in violation of 15 U.S.C. § 2068(a)(2)(B).

## COUNT IV

57.     Paragraphs 1-50 are incorporated by reference and realleged as if set forth fully herein.

58.     There is a reasonable likelihood that Defendant will continue to violate the CPSA reporting requirement and the CPSA prohibition on the sale, offer for sale, distribution in commerce, or importation into the United States of recalled products, warranting injunctive relief pursuant to 15 U.S.C. §§ 2064(b), 2068(a)(2)(B), 2068(a)(4) and 2071(a)(1).

## JURY DEMAND

The United States demands a trial by jury on all Counts so triable.

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

I.     Assess civil penalties against Defendant, in accordance with 15 U.S.C. § 2069, for each separate violation, and the related series of violations, as alleged in Counts I, II and III of this Complaint.

II.     Award the United States injunctive relief against Defendant as set forth in Count IV, in accordance with 15 U.S.C. § 2071(a)(1), that would: (1) require Defendant to comply with the reporting requirements of the CPSA and its accompanying regulations; (2) require Defendant to comply with  the CPSA's prohibition on the sale, distribution, or importation of recalled products; (3) assure such compliance by requiring Defendant to establish internal recordkeeping and monitoring systems designed to provide timely reports to the CPSC whenever Defendant

12

obtains information which reasonably supports the conclusion that any of their products contain a defect which could create a substantial product hazard or creates an unreasonable risk of serious injury or death to consumers, and designed to prevent the sale, distribution, or importation of recalled products; (4) provide for liquidated damages in the event that Defendant fails to comply with the reporting requirements of the CPSA and the CPSA prohibition on the sale, distribution, or importation of recalled products; and (5) require Defendant to establish an escrow account containing funds that could be used to pay any liquidated damages imposed by the Court.

//

//

//

III.    Award Plaintiff judgment for its costs and for such other and further relief that

this Court deems just and proper.

Dated: June 17, 2015                    Respectfully submitted,

                                        JOHN W. VAUDREUIL
                                        United States Attorney

                                        LESLIE K. HERJE
                                        Assistant United States Attorney
                                        Chief, Civil Division

                                        BENJAMIN C. MIZER
                                        Principal Deputy Assistant Attorney General
                                        Civil Division

                                        JONATHAN F. OLIN
                                        Deputy Assistant Attorney General

                                        MICHAEL S. BLUME
                                        Director
                                        Consumer Protection Branch

                                        JILL FURMAN
                                        Deputy Director
OF COUNSEL:                             Consumer Protection Branch

STEPHANIE TSACOUMIS                     s/Alan J. Phelps
General Counsel                         ALAN J. PHELPS
MELISSA V. HAMPSHIRE                    Trial Attorney
Assistant General Counsel               United States Dept. of Justice
HARRIET KERWIN                          Consumer Protection Branch
Attorney                                450 5th Street NW, Rm. 6400
Office of the General Counsel           Washington, DC 20001
U.S. Consumer Product Safety            Tel. 202-307-6154
Commission                              Fax: 202-514-8742
Bethesda, MD 20814                      E-mail: alan.phelps@usdoj.gov