IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | § § § |
| Plaintiff, | § § § |
| | § CASE NO. 3:15-cv-00371 |
| v. | § § |
| SPECTRUM BRANDS, INC., | § § |
| Defendant. | § § |

**PROPOSED FINDINGS OF FACT IN SUPPORT OF DEFENDANT
SPECTRUM BRANDS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS
TO COUNTS I AND II BASED ON THE STATUTE OF LIMITATIONS**

Defendant, Spectrum Brands, Inc. ("Spectrum"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits the following Proposed Findings of Fact in Support of its Motion for Partial Summary Judgment as to Counts I and II based on the statute of limitations. The truth of these facts is admitted only for purposes of this motion.

1.   The Plaintiff is the United States of America ("the Government") on behalf of the U.S. Consumer Product Safety Commission ("CPSC"). (Dkt. 1, Compl. ¶¶ 1-2).

2.   The Defendant is Spectrum Brands, Inc. ("Spectrum") located in Middleton, Wisconsin. (Dkt. 1, Compl. ¶ 4).

3.   Spectrum acquired Russell Hobbs, Inc., the parent company of Applica Consumer Products, Inc. ("Applica") in June 2010, and later merged with Applica in November 2014. (Dkt. 1, Compl. ¶ 5).

4. The Government's Complaint seeks civil penalties against Spectrum for alleged violations of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. § 2051, *et seq.* (Dkt. 1, Compl. ¶¶ 1-2).

5. The products at issue are Black & Decker brand SpaceMaker Under-the-Cabinet Coffeemakers (the "Coffeemakers") manufactured from approximately January 2008 to April 2012. (Dkt. 1, Compl. ¶¶ 1, 17).

6. Applica imported the subject Coffeemakers and distributed approximately 150,000 units within the United States during this time period. (Dkt. 1, Compl. ¶ 17).

7. On February 22, 2009, Applica received the first report of an incident involving an alleged occurrence involving the handle of the carafe breaking while in use ("Coffeemaker Handle Issue"), allowing hot coffee to spill onto a consumer's hand. (Dkt. 1, Compl. ¶ 19).

8. On April 9, 2009, after performing testing on a returned product, Applica made an engineering change to strengthen the top of the handle on the carafe on subsequently manufactured units. (Dkt. 1, Compl. ¶¶ 21-22).

9. From February 2009 through October 2011, Applica received reports from consumers related to the Coffeemaker Handle Issue. (Dkt. 1, Compl. at ¶¶ 19-39).[1]

10. The vast majority of these reports did not involve any allegation of injury, but were complaints about the quality of the Coffeemakers' handle. (Dkt. 1, Compl. ¶¶ 19-39).

11. The reports of alleged injury almost uniformly did not require any medical treatment. (Dkt. 1, Compl. ¶¶ 19-39).

---

[1] Spectrum disputes the Government's characterization of these reports as "information that reasonably supported the conclusion that the Coffeemaker contained a defect . . . that could create a substantial product hazard" and/or that "created an unreasonable risk of serious injury." (Complaint at ¶¶ 52, 54). This dispute does not create a genuine issue of material fact with respect to the issues raised in this motion.

12. The CPSC had received reports of handles breaking on these coffeemakers as early as April 2009, and by the time of Spectrum's report, had received several reports from consumers of handles detaching or breaking on these coffeemakers. (Hemmings Decl. ¶ 2, Ex. A (Reports to CPSC).

13. The examples of complaints cited by the Government in the Complaint include only one case of the claimant seeking medical attention (after she initially did not seek medical attention). (Dkt. 1, Compl. at ¶24).

14. In March 2012, Applica was served with a class action complaint for monetary damages related to the cost of purchasing Coffeemakers exhibiting the Coffeemaker Handle Issue. (Dkt. 1, Compl. ¶ 40).[2]

15. On April 3, 2012, Applica voluntarily reported the Coffeemaker Handle Issue to the CPSC in accordance with the section 15(b) of the CPSA, and requested to proceed with a voluntary "Fast Track" recall of the Coffeemakers ("Applica Section 15(b) Report"). (Dkt. 1, Compl. ¶ 42). *See* 62 Fed. Reg. 39,827 (July 24, 1997) (description of Fast Track program).

16. A preliminary determination is a determination by the CPSC staff that a product constitutes a substantial product hazard. (Dkt. 28 (Deposition of Bini Dahlman), p. 32).

17. In a "Fast Track" recall, the staff does not make a preliminary determination of substantial product hazard. (Dkt. 28, p. 39).

18. CPSC staff did not make a preliminary determination of substantial product hazard regarding the Coffeemaker Handle Issue. (Dkt. 28, p. 39).

19. Bini Dahlman was the Compliance Officer who participated in the file commenced by the Applica Section 15(b) Report. (Declaration of James Hemmings

---

[2] Spectrum disputes the Government's characterization of that complaint as one seeking relief for "a serious safety risk to consumer." Dkt. 1, Compl. ¶ 40. This dispute does not create a genuine issue of material fact with respect to the issues raised in this motion.

("Hemmings Decl.") ¶ 3, Ex. B (United States of America's Objection and Responses to Spectrum Brands, Inc.'s First Set of Interrogatories), p. 5).

20. Tanya Topka was the Lead Compliance Officer who participated in the file commenced by the Applica Section 15(b) Report, and Dahlman's supervisor. (Hemmings Decl. Ex. B, p. 5 and Dkt. 28, p. 19).

21. On April 27, 2012, Applica sent an amended and supplemental section 15(b) report to the CPSC including even more detailed information related to approximately 1,600 consumer complaints about the Coffeemakers, including approximately 60 reports of alleged injury. (Dkt. 1, Compl. ¶ 42).

22. On June 5, 2012, the CPSC notified Applica that it accepted Applica's recall plan as adequate. (Hemmings Decl. ¶ 4, Ex. C (June 5, 2012 Letter)).

23. On May 10, 2012, approximately one month after the Applica Section 15(b) Report, Topka emailed Dahlman to instruct Dahlman to "flag" the Coffeemaker Handle Issue for a "timeliness" legal review by the CPSC Division of Compliance/Office of General Counsel. (ECF Dkt. 28, pp. 44-45 and Hemmings Decl. ¶ 5, Ex. D (Dahlman Deposition Exhibit 1)).

24. Dahlman understood the May 10, 2012 email to mean that the Applica Section 15(b) Report would be looked at for timeliness under the CPSA. (Dkt. 28, p. 45).

25. Within approximately three months of the recall, Ms. Dahlman drafted a detailed referral memorandum for this timeliness legal review by the CPSC Division of Compliance/Office of General Counsel. (Dkt. 28, pp. 45-71).

26. On October 19, 2012, Belinda V. Bell, Esquire wrote a letter to Kerrie L. Campbell, Esquire (counsel for Applica) which stated in part that the CPSC "staff is investigating whether [Applica] complied with the reporting requirements of Section 15(b) [of

the CPSA] regarding [the Coffeemaker Handle Issue]." (Hemmings Decl. ¶ 6, Ex. E (October 19, 2012 Letter), p. 1).

27. Spectrum responded to the Government's investigation letter and request for information on January 15, 2013. (Hemmings Decl. ¶ 7, Ex. F (January 15, 2013 Letter)).

28. The opinion of the United States Supreme Court in *Gabelli v. S.E.C.* was issued on February 27, 2013. 133 S. Ct. 1216, 1220 (2013).

29. The opinion of the United States Court of Appeals for the Seventh Circuit in *United States v. Midwest Generation, LLC* was issued on July 8, 2013. 720 F.3d 644, 647 (7th Cir. 2013).

30. By correspondence dated February 27, 2014 from Belinda V. Bell, Esquire to counsel for Spectrum/Applica, the CPSC staff formally advised Spectrum/Applica of its conclusion that the Applica Section 15(b) Report was untimely in violation of the CPSA, and that civil penalties were warranted. (Hemmings Decl. ¶ 8, Ex. G (February 27, 2014 Letter)).

31. In this letter, the CPSC staff stated that Applica had sufficient information to trigger the CPSA 15(b) Report requirements by "no later than May 2009." (Hemmings Decl. ¶ 8, Ex. G, pp. 7-8).

32. The Government continues to maintain that Applica's "obligation to report arose no later than May 2009." (Hemmings Decl. ¶ 3, Ex. B, p. 10).

33. The CPSC stated in its letter of February 27, 2014 that the April 3, 2012 Applica 15(b) Report was filed "approximately three years later" than when it was required to report. (Hemmings Decl. ¶ 8, Ex. G, p. 9).

34. On June 17, 2015, the Government, on behalf of the CPSC, filed the present Complaint seeking civil penalties and injunctive relief against Spectrum (now merged with Applica). (Dkt. 1, Compl.).

35. In Counts I and II of the Complaint, the Government alleges that Spectrum is liable for a civil penalty under the CPSA for failing to make a timely report under section 15(b) of the CPSA, 15 U.S.C. § 2064(b)(4). (Dkt. 1, Compl. ¶¶ 51-54).

36. By letter dated January 28, 2016, Dahlman advised Applica's counsel that it had determined no further monitoring of the recall was warranted and that it had closed its case with respect to Applica's corrective action plan. (Hemmings Decl. ¶ 9, Ex. H (Jan. 28, 2016 Letter)).

Respectfully submitted,
/s/ Eric J. Wilson

Timothy L. Mullin, Jr.(Admitted *pro hac vice*)
Kevin J. Penhallegon (Admitted *pro hac vice*)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, MD 21202
TMullin@MilesStockbridge.com
(410) 385-3641

Eric J. Wilson
Mark W. Hancock
GODFREY & KAHN
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI 53701-2719
EWilson@gklaw.com
(608)284-2603

Erika Z. Jones
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
ejones@mayerbrown.com
(202)263-3232

*Attorneys for Defendant Spectrum Brands, Inc.*