IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

    vs.                Case No. 3:15-cv-00371

**SPECTRUM BRANDS, INC.,**
a Delaware corporation,

    **Defendant.**

                                          /

## DECLARATION OF ROBERT JACKSON HOWELL, JR.

I, Robert Jackson Howell, Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Deputy Executive Director for Safety Operations, in the Office of the Executive Director with the U.S. Consumer Product Safety Commission (the "CPSC"). I make this Declaration in support of the United States of America's *Opposition to Spectrum Brands, Inc.'s Motion for Partial Summary Judgment*.

2. I have been employed by the CPSC since April 17, 2006, and have served in my current position since January 29, 2012. I provide executive oversight for the Office of Compliance and Field Operations, Office of Hazard Identification and Reduction, Office of International Programs, Office of Import Surveillance, and the Small Business Ombudsman. I have also been serving as Acting Assistant Executive Director for the Office of Compliance and Field Operations since January 2, 2016. In that role, I supervise the surveillance, compliance, and enforcement activities of the CPSC in support of its mission to protect the public against unreasonable risks of injury from consumer products. The enforcement function includes, among other things,

initiating recalls and other corrective actions for products that contain a defect which creates a substantial product hazard.

3. The statements contained herein are based on my personal knowledge and information provided to me in my official capacity. I have reviewed and considered all of the documents and information discussed in this Declaration. If called upon as a witness, I could and would testify completely to the facts set forth herein.

I. **The CPSC's Investigation of the Timeliness of Spectrum's Section 15(b) Reports and Referral to the Justice Department**

4. On April 3, 2012, Spectrum submitted to the CPSC, pursuant to 15 U.S.C. § 2064(b) and 16 C.F.R. part 1115, an initial section 15(b) report regarding the coffeemakers at issue in this lawsuit (the "coffeemakers") through the CPSC's Fast Track Product Recall Program. On April 27, 2012, Spectrum submitted to the CPSC an amended and supplemental section 15(b) report regarding the coffeemakers. Spectrum and the CPSC publicly announced the recall in a press release issued on June 1, 2012. The CPSC never informed Spectrum at any point prior to Spectrum's April 2012 reports that the agency was adequately informed of the carafe-handle defect or risk at issue in this lawsuit.

5. When Spectrum submitted the section 15(b) reports to the CPSC in April 2012, the reports were received by the CPSC's Office of Compliance and Field Operations, which the company consulted throughout the recall.

6. On or about May 31, 2012, the Office of Compliance and Field Operations referred the instant case to the CPSC's Office of General Counsel for an investigation into the timeliness of Spectrum's reports under the Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq.* (the "CPSA"), and specifically 15 U.S.C. §§ 2064(b)(3)-(4).

7. On or about February 27, 2014, CPSC staff sent a letter to Spectrum (the "show-cause letter") informing it of staff's conclusions that the company knowingly violated 15 U.S.C. § 2068(a)(4) in the instant case by failing to report, in a timely fashion, information which was required to be reported under 15 U.S.C. §§ 2064(b)(3)-(4), and the company knowingly violated 15 U.S.C. § 2068(a)(2)(B) by importing, selling, and distributing coffeemakers after the public announcement of the recall. For several months before and after CPSC staff sent the show-cause letter, the parties engaged in settlement negotiations in an effort to resolve the agency's claims that Spectrum violated the CPSA in the instant case. Those negotiations ultimately reached an impasse.

8. On or about April 7, 2014, the Office of General Counsel sought authorization from the CPSC's Commissioners for the agency to refer the instant case to the U.S. Department of Justice (the "Justice Department") for the filing of an enforcement action against Spectrum seeking civil penalties and permanent injunctive relief. The CPSC refers cases to the Justice Department upon a majority vote of the Commissioners. The Office of General Counsel provided the Commissioners with a detailed, 24-page legal memorandum analyzing the facts of this case under the applicable law.

9. On or about April 8, 2014, the CPSC's Commissioners voted unanimously (3-0) to refer this matter to the Justice Department for possible action. The parties held a further round of settlement discussions, which did not result in an agreement. The United States filed suit on June 17, 2015.

## II. Section 15(b) Reporting

10. The CPSC has long taken the public stance that the section 15(b) reporting requirement should be broadly construed to protect the public from potentially unsafe consumer products. The CPSC publishes in the Federal Register all settlement agreements for civil penalties with manufacturers, distributors, or retailers concerning alleged violations of the CPSA, including the section 15(b) reporting requirement.

11. Since Congress enacted the CPSA in 1972, thousands of companies have reported consumer products to the CPSC pursuant to section 15(b). According to the records of the Office of Compliance and Field Operations, between 2005 and 2015, companies submitted to the CPSC approximately 2,865 "Fast Track" section 15(b) reports and approximately 4,459 "non-Fast Track" section 15(b) reports. Of the non-Fast Track reports, approximately 871 (or about 19.5%) resulted in a staff preliminary determination that the product contained a defect which created a substantial product hazard.

12. Spectrum filed section 15(b) reports requesting participation in the CPSC's Fast Track program in the following CPSC cases (agency case-opening dates in parentheses): RP060261 (4/10/2006); RP090279 (4/14/2009); RP090443 (7/8/2009); and RP120304 (4/6/2012). Each case involved coffeemakers Spectrum manufactured, imported, sold, or distributed.

## III. CPSC Preliminary Determinations

13. In a non-Fast Track case, the decision to seek a corrective action (such as a recall) or take no action is made by the Preliminary Determination Panel (the "PD Panel"), a body within the Office of Compliance and Field Operations acting on delegated authority from the Commission to make such determinations.

14. The PD Panel is a staff decision-making body, whose function is to analyze, under applicable law, the information reported to the CPSC pursuant to 15 U.S.C. §§ 2064(b)(3)-(4) and other information in making a "preliminary determination" of (1) whether a product defect exists and, (2) if so, whether the defect rises to the level of a substantial product hazard. The PD Panel only makes preliminary determinations in non-Fast Track cases.

15. The PD Panel typically includes the CPSC's Director of the Division of Defect Investigations, the Compliance Officer assigned to the case, the Compliance Team Lead, an assigned attorney from OGC's Division of Compliance, and assigned technical staff. The PD Panel may also include the Deputy Director and Assistant Executive Director of the Office of Compliance and Field Operations, the Senior Counselor to the Director of the Office of Compliance and Field Operations, the Assistant General Counsel for the Division of Compliance (a member of the Office of General Counsel), and other staff members (if requested).

16. A preliminary determination is based on the PD Panel's assessment of the specific product at issue. The PD Panel evaluates the full range of criteria under the CPSA and CPSC regulations for determining whether a product is a substantial product hazard.

17. The PD Panel's decision generally is communicated to the manufacturer through either (1) a "close letter" stating that no further action by the CPSC is necessary or (2) a letter explaining that CPSC staff has made a preliminary determination the product creates a substantial product hazard, indicating that further action is necessary, and requesting that the manufacturer voluntarily agree to such corrective action.

18. CPSC staff does not make preliminary determinations in "preliminary investigation" (or "PI") cases. A preliminary determination typically is made, however, if a preliminary investigation case is converted to a "compliance investigation" (or "CA") case. The CPSC file number assigned to a case includes the relevant prefix (*i.e.*, PI, CA, or RP).

IV. **Document Authentication**

19. Attached to this Declaration are true and correct copies of the following documents:

    a. Exhibit 75 is a true and correct copy of the May 11, 2011 letter from CPSC Case No. ▆▆▆▆▆▆, which stated, *inter alia*, "After careful consideration and in accordance with 16 C.F.R. § 1115.12(a), the Office of Compliance and Field Operations staff has made a preliminary determination that the [product] . . . presents a substantial product hazard. . . ." *Id.* at USA-00007884.

    b. Exhibit 86 is a true and correct copy of a transcript of the June 24, 2002 testimony by Alan Schoem, one of Spectrum's experts in this case, on behalf of the government in a civil-penalty hearing before the U.S. District Court for the Southern District of California in *United States v. Mirama Enters.*, Case No. 00 CV 2269.

    c. Exhibit 111 is a true and correct copy of the November 2, 2006 close letter from CPSC File No. ▆▆▆▆▆▆, which stated, *inter alia*, "While the staff believes it was appropriate for you to report to the Commission, based upon the information currently available, the staff does not believe the nature and degree of the risk of injury presented by this product necessitate action by the Commission under Section 15 of the CPSA." *Id.* at USA-00015981.

6

Under the penalty of perjury, I affirm that the foregoing is true and correct.

Executed this 6th day of June, 2016.

*Robert Jackson Howell Jr.*
Robert Jackson Howell, Jr.
Deputy Executive Director for Safety Operations
Office of the Executive Director
U.S. Consumer Product Safety Commission