IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                     Case No. 3:15-cv-00371

SPECTRUM BRANDS, INC.,
a Delaware corporation,

    Defendant.
_____/

### UNITED STATES OF AMERICA'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OR OTHERWISE LIMIT EXPERT TESTIMONY OF ALAN SCHOEM AND JOHN MORRALL

Plaintiff, United States of America (the "United States"), by and through undersigned counsel, submits this Reply Memorandum in further support of the government's *Motion to Strike or Otherwise Limit Expert Testimony of Alan Schoem and John Morrall* (the "Motion," or "Mot.") and rebutting arguments made in opposition thereto (the "Opposition," or "Opp.") by defendant Spectrum Brands, Inc. ("Spectrum"). In support thereof, the United States respectfully states as follows:

### ARGUMENT

Spectrum's "experts" fall far short of the admissibility standards set forth in Federal Rule of Evidence 702. The company attempts to buttress irrelevant or improper testimony by misrepresenting the analysis they undertook and, when that fails, suggests that "extensive" experience is a substitute for expert analysis. Spectrum's arguments are ineffectual.

Alan Schoem, offered as an expert on all things CPSC-related,[1] supports improper legal conclusions with a newly concocted reporting standard that really is his personal opinion. Mr. Schoem then rubber-stamps Spectrum's compliance programs as "reasonable"—at least on paper, because he has no idea how they function in practice—based on scant facts and without reference to any data or relevant standards whatsoever. John Morrall similarly provides irrelevant and unfounded testimony, in which he criticizes the CPSC's "risk-assessment" practices generally but addresses only a handful of files relating to the agency's section 15(b) cases. Spectrum's proffered experts present fundamentally flawed testimony that should be limited or excluded.

**A.     Alan H. Schoem**

    **1.     Mr. Schoem's improper and unfounded legal opinions should be excluded.**

This Court should limit Mr. Schoem's testimony to the CPSC's processes and procedures. He should be barred from testifying about Spectrum's reporting obligation in this case, *see* Schoem Rpt. at 1; Opp. at 6, which is an improper legal opinion by an expert witness. The cases prohibiting experts from offering legal opinions are legion. *See*, *e.g.*, *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence. As a general rule, accordingly, an expert may not offer legal opinions."); *Roundy's Inc. v. NLRB*, 674 F.3d 638, 648 (7th Cir. 2012) (The Federal Rules of Evidence "'prohibit experts from offering opinions about legal issues that will determine the outcome of a case.'") (quoting *United States v. Sinclair,* 74 F.3d 753, 757 n.1 (7th Cir. 1996)); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) (the meaning of a

---

[1] Defined terms used, but not specified, herein shall have the meanings specified in the United States' Motion.

2

statute is "a subject for the court, not for testimonial experts") (citing *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994)); *RLJCS Enters., Inc. v. Prof. Benefit Trust Multiple Emp'r Welfare Benefit Plan & Trust,* 487 F.3d 494, 498 (7th Cir. 2007) ("Legal arguments are costly enough without being the subjects of 'experts' depositions and extensive debates in discovery, in addition to presentations made directly to the judge."); *Good Shepherd Manor Found. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) (district court "correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible") (citing *Sinclair*, 74 F.3d at 757 n.1); *Grand River Enters. Six Nations v. VMR Prods. LLC*, No. 13-cv-104, 2014 WL 1671494, at *3 (W.D. Wis. Apr. 23, 2014) (excluding expert testimony on "how the court should interpret" the law) (citations omitted) (Conley, J.); *Maloney v. Central Aviation, Inc.*, 450 F. Supp. 2d 905, 912 (W.D. Wis. 2006) (noting that "expert witnesses are prohibited from rendering legal opinions") (citation omitted).

It is absurd to suggest that Mr. Schoem merely offers "information" relevant to Spectrum's "fair notice" claim. *See* Opp. at 7 ("Spectrum disclosed Mr. Schoem's expert opinion in support of its defense that, because of a lack of fair notice, Spectrum did not have a duty to report based on the scope of available evidence), 9 ("[t]here is a difference between stating a legal conclusion and providing concrete information") (quotations and citation omitted). In practically the same breath that it makes this claim, Spectrum concedes that Mr. Schoem testifies "about what *conclusion* was appropriate for [the company] to draw [about reporting] based on the information available to it." *See id.* at 7 (emphasis added); *see also id.* (stating that Mr. Schoem's "analysis includes interpreting CPSC regulations"). Mr. Schoem explicitly argues that "Spectrum did not have a reporting obligation to the CPSC," *see* Schoem Rpt. at 21, and Spectrum relied on that legal conclusion in opposing the government's *Motion for Summary*

3

*Judgment*. *See* Dkt. #110 (Def.'s Mem. Opp. Mot. Summ. J.) at 11-12, 17-18. Spectrum acknowledges that whether it had an obligation to report its defective coffeemakers "is the ultimate legal conclusion in this case," and agrees that "it is ultimately for th[is] Court to decide" that issue. *See* Opp. at 8-9. Mr. Schoem's opinion on what this Court's "legal conclusion" should be is improper. *See*, *e.g.*, *Jimenez*, 732 F.3d at 721; *Roundy's Inc.*, 674 F.3d at 648 (citation omitted); *Caputo*, 517 F.3d at 942; *RLJCS Enters.,* 487 F.3d at 498; *Good Shepherd,* 323 F.3d at 564 (citation omitted); *Sinclair,* 74 F.3d at 757 n.1; *Bammerlin*, 30 F.3d at 900 (citations omitted); *Grand River Enters.*, 2014 WL 1671494, at *3 (citations omitted); *Maloney*, 450 F. Supp. at 912 (citation omitted).

Mr. Schoem's testimony simply makes no sense when limited to fair notice. He is not offered as an "expert" in what courts consider in evaluating constitutional fair notice claims. *See* Schoem Rpt. at 1 (claiming expertise on the CPSC's and Spectrum's processes and procedures). Courts, not experts, make that determination. *See*, *e.g.*, *United States v. S. Ind. Gas & Elec. Co.*, 245 F. Supp. 2d 994, 1011 (S.D. Ind. 2003) (quoting *Gen. Elec. Co. v. U.S. Envtl. Prot. Agency*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)) (quotations omitted) (assessing vagueness claim "by reviewing the regulations and other public statements issued by the agency"); *see also id.* (citing *Sekula v. FDIC*, 39 F.3d 448, 457 (3rd Cir. 1994)) (agency's longstanding, consistent, public interpretation provided fair notice). Neither Mr. Schoem, nor any expert, can dictate to this Court what it can and cannot consider under the law. *See*, *e.g.*, *Jimenez*, 732 F.3d at 721. That is for this Court to decide. *See id.*

The company identifies no legal authority sanctioning an expert's effort to provide legal opinions. *See* Opp. at 6-10. Rule 704 does not authorize expert legal "'opinions which would merely tell the [trier of fact] what result to reach.'" *See Roundy's Inc.*, 674 F.3d at 648

(quoting Fed. R. Evid. 704 advisory committee's note to 1972 amendment). The Seventh Circuit repeatedly has affirmed that expert legal opinions are improper. *See*, *e.g.*, *Jimenez*, 732 F.3d at 721; *Roundy's Inc.*, 674 F.3d at 648 (citation omitted); *Caputo*, 517 F.3d at 942; *RLJCS Enters.*, 487 F.3d at 498; *Good Shepherd*, 323 F.3d at 564 (citation omitted); *Sinclair*, 74 F.3d at 757 n.1; *Bammerlin*, 30 F.3d at 900 (citations omitted). This Court likewise has applied this bedrock evidentiary principle in excluding expert testimony. *See Grand River Enters.*, 2014 WL 1671494, at *3 (citations omitted). The cases Spectrum cites to support Mr. Schoem's legal opinions actually condemn them. *See Roundy's Inc.*, 674 F.3d at 648 (experts are barred from "offering opinions about legal issues") (quotations and citation omitted) (Mot. at 7); *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007) (expert testimony "couch[ed] in legal terms" is improper) (citation omitted) (Mot. at 7); *Sanders v. City of Chicago Heights*, No. 13-221, 2016 WL 1730608, at *7-9 (N.D. Ill. May 2, 2016) ("As a general rule, an expert cannot offer legal opinions or conclusions.") (citations omitted) (Mot. at 9).[2]

Mr. Schoem does not even undertake the proper legal analysis in concluding that Spectrum did not have a reporting obligation here. He cites to the section 15(b) reporting standard and breezes through a handful of regulations, *see* Schoem Rpt. at 4, 11, but never does what the law required of Spectrum by analyzing—under the CPSA, CPSC regulations, and court opinions—the information in the company's possession about its defective carafe handles. *Compare* Schoem Rpt. at 11-17 *with* Dkt. #53 (Plf.'s Mem. Supp. Mot. Summ. J.) at 27-47.

---

[2] The *Campbell* case is inapt. *See Campbell v. United States*, 904 F.2d 1188, 1193 (7th Cir. 1990) (Mot. at 8). In *Campbell*, the defendant offered expert testimony on the standard of care applicable to the plaintiff's Illinois-law, medical-malpractice claim. *See id.* Illinois courts require such expert testimony in the medical-malpractice context "when the assessment of the alleged negligence requires knowledge, skill, or training in a technical area outside the comprehension of lay persons." *Prairie v. Univ. of Chicago Hosp.*, 298 Ill.App.3d 316, 321 (1st Dist. 1998) (citation omitted). That state-law rule is irrelevant here.

Mr. Schoem instead discusses *other* CPSC cases—involving different products, failure modes, and fact patterns generally—and contends that Spectrum reasonably relied on them in deciding not to report its coffeemakers in this case. *See* Schoem Rpt. at 13 ("it is reasonable and necessary for Spectrum to formulate [reporting] decisions . . . based on CPSC decisions that are brought to its attention . . ."). Spectrum casts this as some grand analysis, *see* Opp. at 10, but, in reality, Mr. Schoem's legal conclusion about the company's reporting obligation is based on little more than a simplistic comparison of reported injuries in the various cases. *See* Schoem Rpt. at 11-17. That is not the law.

"A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Mr. Schoem's reasonable-reliance standard is not "widely used by specialists" because he made it up. At his deposition, Mr. Schoem came up blank when asked for authority supporting his claim that companies can decide not to report based on the CPSC's fact-specific decisions in other cases. *See* Mot. at 7-8 (citing Schoem Dep.). Spectrum concedes that no such authority exists. *See* Opp. at 10 ("Neither Mr. Schoem nor Spectrum asserts that the CPSA or any interpretive regulations includes prior CPSC determinations on similar cases as part of its language."). Mr. Schoem's testimony is nothing more than his personal opinion of what the law should be, and that is improper. *See* Mot. at 7-8. No amount of experience permits experts to "waltz into a courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable. . . ." *See Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).

Spectrum tries to fill in the gaps in Mr. Schoem's testimony with CPSC regulations purportedly demonstrating that companies have "room for interpretation in deciding whether

6

to report." *See* Opp. at 9-10 (citing 43 Fed. Reg. 34,988, 34,992-93 (Aug. 7, 1978); 57 Fed. Reg. 34,222, 34,225 (Aug. 4, 1992)). That misses the point. Saying that section 15(b) requires companies to exercise judgment is worlds apart from allowing them to invent new legal standards or decide what information is relevant to a reporting decision. Section 15(b) establishes the reporting standard, *see* 15 U.S.C. §§ 2064(b)(3)-(4), and CPSC regulations specify information companies should evaluate in deciding whether to report. *See* 16 C.F.R. §§ 1115.4 (information relevant to evaluating defects), 1115.6 (information relevant to evaluating unreasonable risks of serious injury), and 1115.12(f) (information relevant to evaluating substantial product hazards). As Spectrum admits, neither statute nor regulation recognizes prior CPSC decisions as a factor relevant in future cases. *See supra* p. 6. In fact, the opposite is true. *See* 16 C.F.R. § 1115.12(g) (reporting evaluated on a "case-by-case basis" taking into account the specific factual context presented).[3]

Spectrum cannot get its story straight. When confronted with Mr. Schoem's improper legal conclusion, the company claims he "*did not undertake to make th[e] ultimate factual analysis* [of Spectrum's reporting obligation] himself." *See* Opp. at 8 (emphasis added). Mr. Schoem's paltry discussion of the facts of this case supports this statement, *see* Schoem Rpt. at 16 (referencing numbers of consumer complaints and reported burns from defective carafe

---

[3] Nor did Congress create an exception to section 15(b) for companies that can generate some reasonable excuse not to report. *See* Dkt. #94 (Def.'s Mem. Opp. Mot. Part. Summ. J.) at 49-50. The relevant inquiry under section 15(b) is whether information in a company's possession could indicate a *potential hazard*, not whether the information *might not* indicate such a hazard. *See* 57 Fed. Reg. at 34,223 ("[T]his section . . . recognizes that a section 15(b) report does not always indicate the presence of a substantial product hazard, to make it clear that Congress and the Commission expect firms to report *potential hazards*. . . . [The CPSC] believes that this is already clear. The rule already explains at several points that firms have an obligation to report potential hazards.") (emphasis in original). Spectrum and Mr. Schoem read the standard backward. The CPSC regulations support the government's position. *See* 43 Fed. Reg. at 34,992-93; 57 Fed. Reg. at 34,225.

handles), which unmasks the guesswork underlying his legal conclusion about Spectrum's reporting obligation. *See Clark*, 192 F.3d at 759 n.5. But in denying that Mr. Schoem failed to analyze this case under the actual legal standard, Spectrum argues that his opinion is "based on the applicable language [of section 15(b) and CPSC] regulations, *as well as an interpretation of the other information that was available to [the company]* in making the determination whether to report." *See* Opp. at 10 (emphasis added). So did Mr. Schoem analyze all of the information in the company's possession, or not? His report barely mentions or ignores altogether much of the information the law instructs companies to consider. *Compare* Dkt. #53 at 27-47 *with* Schoem Rpt. at 11-17. Moreover, Mr. Schoem's heavy reliance on other CPSC cases means he is *not* applying the correct standard. Either way, Mr. Schoem plainly offers an improper legal conclusion about the company's reporting obligation. *See*, *e.g.*, *Jimenez*, 732 F.3d at 721.

This Court should exclude Mr. Schoem's legal opinion about Spectrum's reporting obligation and his testimony that the company reasonably relied on the CPSC's decisions in other cases.

### 2. Mr. Schoem should also be barred from providing his conclusory opinions about Spectrum's compliance program.

Mr. Schoem's opinion that Spectrum has adequate programs for ensuring compliance with the CPSA is also markedly deficient. *See* Schoem Rpt. at 22. The government explains in its Motion that Mr. Schoem's testimony violates Rule 702 because he (1) relies on bare-bones facts consisting of 50 pages of documents and a single conversation with his client, (2) unhelpfully limits his testimony to how the company's programs appear *on paper* rather than how they function *in practice*, and (3) fails to explain or utilize any expert methodology supporting his conclusory statement that Spectrum's programs are "reasonable." *See* Mot. at 8-11. The company feebly responds by harping on Mr. Schoem's credentials and blaming the

government for not telling him how to perform his analysis. *See* Opp. at 10-15. Spectrum's arguments are inapposite.

Mr. Schoem's opinion is based on insufficient facts or data in violation of Rule 702(b). *See* Fed. R. Evid. 702(b) (requiring that expert testimony be "based on sufficient facts or data"). It is telling that in responding to this argument, the company immediately falls back on Mr. Schoem's "experience." *See id.* at 11. Spectrum admits that his conclusion that the company's compliance programs are "reasonable" is based on virtually nothing. *See id.* at 11-13. Mr. Schoem read a few high-level documents and spoke with a man who runs the company's compliance programs and has every incentive to want a favorable court opinion. *See id.* at 11-12; *see also* Mot. at 8-9. Mr. Schoem has no idea how Spectrum's programs are implemented or function in the real world; he performed no independent investigation, interviewed no other company witnesses, and reviewed no data. *See* Mot. at 9 (citations omitted).[4] Spectrum claims this is the type of review Mr. Schoem performed as a consultant, which is inconsistent with his deposition testimony and if true simply would mean the government gave him more credit than he was due—not that his testimony here satisfies Rule 702(b). *Compare id. with* Opp. at 13. If Spectrum believes Mr. Schoem's experience allows him to testify on any CPSC-related topic irrespective of "proof," the company is mistaken. *See*

---

[4] Spectrum tries to shift the burden to the government to specify the additional information, documentation, and interviews needed for Mr. Schoem to "form a complete opinion." *See* Opp. at 13. As explained below, *Spectrum* has the burden of proving the reliability of Mr. Schoem's testimony. *See Brown v. Burlington N. Santa Fe R.R. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (citing *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)) ("The party offering the expert testimony bears the burden of proving its reliability."). Regardless, there are many obvious steps Mr. Schoem could have taken to understand better the company's compliance programs, including interviewing individuals from the various departments he addresses in his report and reviewing data on how quickly product-related safety issues are identified, investigated, and escalated to Spectrum's ultimate decision-makers in the legal department. *See* Schoem Rpt. at 17-21.

Fed. R. Evid. 702(b); *see also Zenith Elec.*, 395 F.3d at 419 (an expert's experience is not a substitute for "analytic strategies"); *Clark*, 192 F.3d at 759 n.5 (even "supremely qualified" experts cannot give unfounded opinions).

Mr. Schoem's testimony is also unhelpful in violation of Rule 702(a). *See* Fed. R. Evid. 702(a) (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). Spectrum uses Mr. Schoem's testimony to defend against the government's request for permanent injunctive relief, which requires a "reasonable likelihood of future violations." *See SEC v. Yang*, 795 F.3d 674, 681 (7th Cir. 2015) (citing *SEC v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982)) (a government agency seeking a statutory injunction must show the defendant violated the statute and there is a "reasonable likelihood of future violations. . . ."). Yet Spectrum, like Mr. Schoem, concedes that he has no idea how the company's compliance programs function in practice. *See id.* at 10 (citing Schoem Dep.); Opp. at 10-11. Spectrum seems to assert that only an employee can offer opinions on the company's compliance programs from a real-world perspective. *See* Opp. at 14 ("Mr. Schoem is not a Spectrum employee and does not have the benefit of working for the organization. . . ."). If that is the case, Spectrum should have had an employee provide testimony on this topic. Mr. Schoem's unhelpful testimony is inadmissible. *See* Fed. R. Evid. 702(a).

Finally, Mr. Schoem fails to apply any expert methodology in violation of Rule 702(c) and (d). As explained in the government's Motion, he simply summarizes select portions of Spectrum's compliance programs before proclaiming them to be "reasonable." *See* Mot. at 10 (citing Schoem Rpt. at 16-21). Spectrum contends there is no other analysis to be done and demands that the government explain how Mr. Schoem should have performed his work. *See* Opp. at 13-14 ("The Government does not articulate what it considers to be the appropriate

methodology. . . ."). But it is *Spectrum's*, not the government's, burden to supply a reliable methodology. *See Brown*, 765 F.3d at 772 (citing *Lewis*, 561 F.3d at 705). Spectrum cannot meet that burden because Mr. Schoem provides no basis for testing his conclusion that the company's compliance programs are reasonable—he admits he totally ignored, and does not even understand, relevant industry standards and regulatory requirements. *See* Mot. at 10-11 (citing Schoem Dep.). That is improper. "'An expert who supplies nothing but the bottom line supplies nothing of value to the judicial process.'" *Zenith Elec.*, 395 F.3d at 419-20 (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)).

This Court should exclude in its entirety Mr. Schoem's testimony about Spectrum's compliance programs.

**B.     John F. Morrall**

The United States also moves to exclude Dr. Morrall's irrelevant and unfounded testimony about the CPSC's "risk-assessment" procedures. As the government has explained, Dr. Morrall's opinions have no bearing on any issue relevant to this case. Even if they did, Dr. Morrall's testimony is based on information so limited as to be legally insufficient under *Daubert*. Whatever expertise Dr. Morrall has about risk-assessment techniques generally, he clearly—and admittedly—knows little about how the CPSC operates.

First, Dr. Morrall's testimony is unhelpful in violation of Rule 702(a). Spectrum asserts that his opinions pertain to the company's arguments regarding "fair notice" and the CPSC's allegedly "arbitrary and capricious" actions in this case. *See* Opp. at 16. Both defenses are legally invalid for the reasons the United States previously set forth. *See* Dkt. #94 at §§ I(A)-(B). Even setting that issue aside, Dr. Morrall's irrelevant testimony does not touch on the CPSC's actions in *this* case, or any factors relating to the actual coffeemakers at issue *here*. *See* Mot. at

11

13. Dr. Morrall testified at his deposition that he reviewed almost nothing regarding the actual case being litigated. *Id.* (citing Morrall Dep.). Dr. Morrall's opinions about how the CPSC could do a better job generally—or should have done a better job in other cases—adds nothing useful to the determination of when Spectrum's duty to report the subject coffeemakers under the CPSA first arose. Such testimony about extraneous facts and invalid legal arguments would only confuse, rather than help, the finder of fact. *See id.* at 13-14 (citing Fed. R. Evid. 702(a) (an expert may testify "if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.")).

Nor is Dr. Morrall's testimony based on sufficient facts or data as Rule 702(b) demands. Dr. Morrall considered two sources in formulating his opinions: an internal CPSC employee manual; and a handful of files relating to other cases. Mot. at 14. Regarding the manual, Spectrum falls into the same trap as Dr. Morrall in assuming (or pretending) that this one document represents the sole source of guidance on how CPSC staff must perform their duties. *See* Opp. at 18. No evidence supports that assumption. For instance, CPSC employee Tanya Topka did not state or "confirm," *id.* at 18, that she and other agency staff rely only on the specific statements in the compliance manual to the exclusion of all other information. Dkt. #96 (Plf.'s Resp. to Def.'s PFOF) at ¶ 113 (citing Topka Dep.). And while Bini Dahlman, a CPSC compliance officer, stated initially that she did not recall training "on making preliminary determinations," she further testified that she received "on-the-job training." *Id.* at ¶ 119 (citing Dahlman Dep.).

The manual itself does not claim to be a comprehensive treatise on all section 15 procedures, and it plainly directs readers to other information such as specific sections of the CPSA, relevant regulations, and statements of agency policies, procedures, and other

requirements, such as those in the CPSC's Recall Handbook. *Id.* at ¶¶ 114-15 (citing the manual). Dr. Morrall conceded at his deposition that he does not know how CPSC staff use the manual, who reads it, what other training staff receive, or whether the manual actually sets out all the relevant policies and procedures that CPSC employees consider. *See id.* at 14 (citing Morrall Dep.). In fact, he assumed the compliance manual does *not* include everything CPSC staff do or consider in reviewing a case. *See* Mot. at 14-15 (citing Morrall Dep. at 52:22 – 53:5 ("I assume it doesn't set out everything, and other factors may play a role.")). Despite that assumption, he failed to review other possible sources of information before opining about CPSC procedures as though the manual perfectly captured them in comprehensive detail. *Id*. at 15.

As to the CPSC files involving other cases, Dr. Morrall acknowledged that these documents also were of limited value. Mot. at 15-16 (citing Morrall Dep.). Dr. Morrall conceded he did not know whether the small sample of cases he reviewed was representative of the many thousands of cases he did not review. *Id.* (citing Morrall Dep.). In fact, Dr. Morrall reasonably admitted that he could not draw any expert conclusions about how CPSC staff generally review products for substantial product hazards. *Id.* Dr. Morrall merely could opine that he personally thought the risks in some cases he reviewed seemed greater than the risks in this case, although he knew little about the facts of this case. Mot. at 17 (citing Morrall Dep. at 99:20-22 ("I have no facts about the SpaceMaker coffee case. I've not been given that file.")).

In light of such admissions, Dr. Morrall cannot possibly claim to provide expert opinions about how CSPC staff do anything. Spectrum argues that Dr. Morrall "can hardly be criticized for not reviewing enough materials when those materials are simply unavailable." Opp. at 19. Wrong. An expert *can* be criticized for basing opinions on insufficient facts or data. *See* Fed. R.

Evid. 702(b). The data an expert happens to have on hand is not automatically "sufficient" just because that is what was available to him. Dr. Morrall purports to offer "expert" opinions on whether the CPSC consistently uses proper risk-assessment techniques, but his report and deposition testimony demonstrate that he actually knows little about how the agency and its staff operate. *See*, *e.g.*, Morrall Dep. at 38:7 – 39:5 ("I don't know of course exactly actually what went on [in the cases reviewed]. I don't know. I guess you'd have to be there to know."). Dr. Morrall's sweeping conclusions based on admittedly little information fall far short of *Daubert*'s requirements.

## CONCLUSION

The United States respectfully requests that this Court enter an order GRANTING the government's Motion and striking or otherwise limiting the testimony of Mr. Schoem and Dr. Morrall as set forth therein.

Dated: July 11, 2016

Respectfully submitted,

OF COUNSEL:

MARY T. BOYLE
General Counsel
MELISSA V. HAMPSHIRE
Assistant General Counsel
HARRIET KERWIN
Attorney
Office of the General Counsel
U.S. Consumer Product Safety Commission
Bethesda, MD 20814

JOHN W. VAUDREUIL
United States Attorney

LESLIE K. HERJE
Assistant United States Attorney
Chief, Civil Division

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

JONATHAN F. OLIN
Deputy Assistant Attorney General

MICHAEL S. BLUME
Director
Consumer Protection Branch

JILL FURMAN
Deputy Director
Consumer Protection Branch

*/s/ Monica C. Groat*
MONICA C. GROAT
Trial Attorney
ALAN J. PHELPS
Senior Litigation Counsel
THOMAS E. ROSS
Trial Attorney
United States Dept. of Justice
Consumer Protection Branch
450 5th Street NW, Rm. 6400
Washington, DC 20001
Tel. (202) 532-4218
Fax (202) 514-8742
Monica.C.Groat@usdoj.gov

# CERTIFICATE OF SERVICE

I, THOMAS E. ROSS, hereby certify that today, July 11, 2016, I served via the CM/ECF system, on all counsel of record, a copy of the *United States of America's Reply Memorandum in Support of Motion to Strike or Otherwise Limit Expert Testimony of Alan Schoem and John Morrall*.


Dated: July 11, 2016

                Respectfully submitted.

                */s/ Thomas E. Ross*
                THOMAS E. ROSS
                Trial Attorney
                United States Dept. of Justice
                Consumer Protection Branch
                450 5th Street NW, Rm. 6400
                Washington, DC 20001
                Tel. (202) 598-8697
                Fax (202) 514-8742
                Thomas.E.Ross@usdoj.gov