IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,                OPINION & ORDER

    v.

                                                   15-cv-371-wmc

SPECTRUM BRANDS, INC.,

                Defendant.

---

Still before the court following the court's entry of judgment (dkt. #235), is defendant Spectrum's motion to stay enforcement of the permanent injunction for violations of the Consumer Product Safety Act ("CPSA"), with the exception of ¶ B of that injunction, with which Spectrum represents it has already complied. (*See* dkt. #236 at 1-2, dkt. #237 at 5.) Recognizing that defendant's criticism of the permanent injunction may have merit -- particularly in light of Spectrum's assertion that it had already taken affirmative steps to improve its compliance procedures -- the court "direct[ed] Spectrum to provide written notice . . . detailing what specific improvements it has already made" and provided the government an opportunity to respond. (Dkt. #243 at 3-4.) Between the request for a stay and the court's order of November 13, 2017, Spectrum filed a notice of appeal. (*See* dkt. ##240-242.) Convinced that the court's permanent injunction fell short of the detail and specificity requirements of Rule 65(d)(1)(B) & (C), the court issues this opinion modifying the injunction to (1) clarify Spectrum's specific obligations to ensure compliance for the parties and (2) partially stay its enforcement to maintain the status quo during the appeal before the Seventh Circuit Court of Appeals.

OPINION

I. **Jurisdiction**

As noted above, Spectrum's pending motion requests a stay pending appeal. (*See* dkt. #236.) Because an appeal is currently pending, this court's jurisdiction is constrained. *See Ced's v. U.S. EPA*, 745 F.2d 1092, 1095 (7th Cir. 1984) ("[T]here is a general rule that the filing of a notice of appeal divests the district court of jurisdiction over the matters appealed." (internal citations omitted)). Indeed, "[s]everal circuits have held that the district court may not alter the injunction once an appeal has been filed except to maintain the status quo of the parties pending the appeal." *United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1165, 1170 (D. Colo. 1998) (citing cases from the Second, Fourth, Fifth and Ninth Circuits).[1] Other circuits permit modification of an injunction during the pendency of appeal, even if the status quo is altered where "the modification would preserve the integrity of the appeal." *Id.* at 1170-71 (citing *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3d Cir. 1989); *Bd. of Educ. Of St. Louis v. State of Missouri*, 936 F.2d 993, 996 (8th Cir. 1991)).

Although the Seventh Circuit has not weighed in on this question, it would seem, at minimum, that "any injunctive action taken [by this court] pursuant to Rule 62(c) 'must be designed to aid the appeal and, accordingly, may not materially alter the status of the

---

[1] "*Maintaining the status quo* means that a controversy will still exist once the appeal is heard. Any action on the district court's part which has the effect of divesting the court of appeals of its jurisdiction over the matter, by eliminating the controversy prior to the hearing of the appeal, is inappropriate." 12 James Wm. Moore et al., *Moore's Federal Practice* § 62.06[1] (Matthew Bender 3d Ed. 2017) (emphasis in original).

2

case on appeal.'" *Id.* at 1171 (quoting Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 321-22 (1992)); *see also S & S Sales Corp. v. Marvin Lumber & Cedar Co.*, 457 F. Supp. 2d 903, 905-06 (E.D. Wis. 2006) ("Construed narrowly, Rule 62(c) only authorizes district courts to issue orders designed to preserve the status quo or, perhaps somewhat more liberally, to preserve the integrity of the case on appeal. . . . [J]udicial authority 'must be designed to aid the appeal and, accordingly, may not materially alter the status of the case on appeal.'" (quoting Ides, *supra*, 143 F.R.D. at 320) (other internal citations omitted)).

In issuing this opinion, therefore, the court is very cognizant of the limitations on its authority. As the government notes, however, "[t]he parties appear to agree that the Court retains jurisdiction, despite the ongoing appeal, to make . . . a minor clarification [of the permanent injunction]." (Dkt. #254 at 7 (citing dkt. #250 at 3 (citing *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 n.14 (9th Cir. 1994); *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 985 F. Supp. 2d 23, 29 (D.D.C. 2013) (each finding the district court had jurisdiction to issue amended order clarifying its original injunction in order to supervise compliance))).) More importantly, the Supreme Court has expressly recognized that the district court's

> sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances . . . have changed . . . . The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.

*Sys. Fed. No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961).

Given that the court agrees with the thrust of Spectrum's motion to stay -- that the injunction as written is too vague and overly broad in light of Spectrum's own actions to ensure future compliance with the CPSA -- the court will modify it to preserve the status quo during the pending appeal and clarify the injunction's specific requirements. *See Wash. Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 29 ("The district court's power to modify an injunction to preserve the status quo necessarily includes the lesser power to clarify the injunction to supervise compliance."); *Power Eng'g Co.*, 10 F. Supp. 2d at 1172 (granting plaintiff's request for order requiring defendants provide a specified form of financial assurance following earlier issuance of preliminary injunction directing defendants provide assurance in a form permitted by state law); *see also Advent Elec., Inc. v. Buckman*, No. 95 C 0305, 1995 WL 683833, at *1 (N.D. Ill. Nov. 16, 1995) (recognizing that plaintiff's motion to "clarif[y] the precise parameters of the preliminary injunction" was "merely a petition for clarification" that did "not call for the court to consider new issues or arguments not previously raised, nor . . . have the effect of changing the relationship between the parties that was [previously] established").[2]

## II. Scope of Injunction

Having considered the parties' helpful submissions, therefore, the court will modify

---

[2] In the same vein, the court previously determined that Spectrum's past violations were severe enough to justify injunctive relief (*see* dkt. #234 at 16-21) and declines Spectrum's invitation to reexamine the appropriateness of a permanent injunction (*see* dkt. #250 at 13-15). To the extent that the court has exceeded its authority in clarifying the permanent injunction as part of its issuance of the stay, hopefully this opinion at least informs the Court of Appeals and the parties as to the intent behind the injunction, and thereby facilitates a meaningful, final resolution of the parties' dispute.

4

the injunction to include the following, specific requirements -- all of which Spectrum represents are already in place (*see* dkt. #250 at 8-9, 11-12) -- in an effort to ensure compliance while preserving the status quo as the appeal pends:

1) Maintain the position of Senior Director, Global Quality (or its equivalent) with qualifications and authority to monitor (and if necessary, enhance) Spectrum's policies to ensure future product quality and safety;

2) Regularly track product safety information, including product return rates, call center data, and product "star" ratings by consumers on various websites, and evaluate that information to determine whether issues are being identified and appropriately handled;

3) Document calls and written communications regarding potential and actual incidents and injury information, collect products that are the subject of reports by consumers or retail partners of potential safety issues, analyze those products *and* bring the results of any such analysis to the attention of Spectrum's Senior Director, Global Quality (or its equivalent), and others as appropriate, to determine whether Spectrum has a reporting obligation to the CPSC;

4) Implement a formal "Request for Corrective Action" procedure whereby quality engineers and product safety managers can make a request to change a product based on various factors, including consumer complaints and incidents;

5) Maintain a "Product Hold Process" (or its equivalent) through which the manufacture and distribution of products can be placed on hold for design issues, manufacturing issues, performance issues, and safety issues, including any and all such products that may be returned to Spectrum by a warehouse, distributor, customer or otherwise to prevent the sale of recalled products; and

6) Ensure compliance training of responsible employees on CPSA and/or CPSC regulations, particularly with respect to section 15(b)'s reporting requirement under 15 U.S.C. § 2064(b)(3)-(4) and the prohibition of the sale of recalled products under 15 U.S.C. § 2068(a)(2)(B).

All of these requirements are consistent with the spirit of the court's original permanent injunction, if not its letter. Although substantially more specific, now that the court has benefited from further information and briefing by the parties, the intent of the court's modifications are "to make explicit what is already implicitly so" pursuant to Fed. R. Civ.

P 65(d)(1)(B) & (C). *See Wash. Metro. Area Transit Comm'n*, 985 F. Supp. 2d at 30 ("Because a court's authority to modify or clarify an injunction while on appeal is limited to preserving the status quo or otherwise supervising compliance, its power to clarify to make explicit which non-parties are bound by the injunction is necessarily as broad as (though no broader than) the non-party provisions in Fed. R. Civ. P. 65(d)(2)(B)-(C).")

The government objects that "Spectrum's response largely recycles statements by Mr. Schoem and Mr. Mihlbauer and other evidence that all was previously considered by the Court" and "presented at the February hearing." (Dkt. #254 at 3.) However, this argument misses the point: the question is whether following Spectrum's prior misconduct, which justified a permanent injunction, its now-improved compliance programs "ensure compliance with the CPSA and the regulations enforced by the CPSC" as the permanent injunction requires. (Dkt. #235 at 1.) As the party under the injunction's strictures, Spectrum is unquestionably entitled to clarification as to whether its undertakings to date are "appropriate improvements" required by that injunction. *See Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984), reh'g denied ("A true interpretation . . . does not change the parties' original relationship, but merely restates that relationship in new terms."); *see also Advent Elec.*, 1995 WL 683833 at *1 ("To determine whether or not an order is a clarification, or a modification, the court must look to the actual effect of the order. If the motion calls for a court to consider[] a question or issue not previously considered, then it is calling for a modification as opposed to a

clarification.").³ Moreover, because they have already been undertaken, the improvements neither upset the status quo, nor detract from the integrity of the parties' pending appeal.

For its part, the government argues that "[t]he injunction entered against Spectrum meets the requirements of Rule 65," but suggests that "the Court should modify the injunction to direct Spectrum to retain an independent, outside expert to help the company create a robust CPSA compliance program." (Dkt. #254 at 1.) The government is correct that the aforementioned improvements may not be sufficient to "ensure compliance" and "avoid a repetition of the violations discussed [in the court's earlier] opinion and order." (Dkt. #235 at 1-2.) As the government explains, such "[a] professional outside consultant . . . could confidentially delve into the details of relevant corporate procedures, candidly discuss operations with pertinent employees, and assist in designing detailed, effective enhancements," as well as "design employee training necessary to make the revised program work." (Dkt. #254 at 8-9.)

The government's points are well taken. Hiring an outside consultant to review its procedures is a straightforward, specific way for Spectrum to ensure its good faith compliance with the permanent injunction, rather than continuing to live under the vagueness of the admonition to "obey-the-law" currently contained in the permanent injunction. Keeping in mind its narrow authority because of the pending appeal, the court will further clarify its permanent injunction with the following provisions:

---

³ The court notes that this situation is also distinguishable from that in *Ced's*, 745 F.2d 1094-95, where the Seventh Circuit determined that a supplemental memorandum opinion providing only additional grounds of support for an earlier order granting a preliminary injunction failed to meet the "assist the court of appeals in its determination" exception to the rule that "the filing of a notice of appeal divests the district court of jurisdiction over the matters appealed."

7) Defendant shall retain, at its own expense, an independent expert, who, by reason of background, training and education is qualified to assist in reviewing and recommending changes, if necessary, to Spectrum's comprehensive safety program for CPSA compliance, with particular emphasis on compliance with the section 15(b) reporting requirement and procedures necessary to prevent the sale of recalled products.

   a. The parties may have 90 days to agree upon an independent expert, or if the parties cannot reach agreement, for each party to designate one expert with whom the court will consult to identify a neutral expert.

   b. Following the retention of the neutral expert and that expert's review, Spectrum shall have 120 days to implement the recommendations made by that expert in good faith, unless within 30 days of receiving a recommendation, Spectrum files a written challenge in this court on the basis that it is unreasonable (in timeframe or otherwise) or overreaches the number or severity of defendant's past violations of the CPSA, in which case Spectrum need only implement that recommendation by further order of this court.

8) Compliance with ¶¶ 1–7 shall be deemed good faith compliance with this permanent injunction.

As noted, these additional changes are also intended to provide specific guidance to Spectrum to ensure compliance. Unlike paragraphs 1–6 above, however, implementation of paragraph 7 would go beyond the status quo, as paragraph 7 requires Spectrum to do more than simply maintain the status quo. As such, the court will stay enforcement of that paragraph pending appeal, as the Seventh Circuit is in the best position to resolve whether this particular provision is an appropriate clarification by this court both as a matter of jurisdiction and on the merits.

ORDER

IT IS ORDERED that:

A. The permanent injunction (dkt. ##234, 235) is amended to read as follows:

1) Maintain the position of Senior Director, Global Quality (or its equivalent) with qualifications and authority to monitor (and if necessary, enhance) Spectrum's policies to ensure future product quality and safety;

2) Regularly track product safety information, including product return rates, call center data, and product "star" ratings by consumers on various websites, and evaluate that information to determine whether issues are being identified and appropriately handled;

3) Document calls and written communications regarding potential and actual incidents and injury information, collect products that are the subject of reports by consumers or retail partners of potential safety issues, analyze those products *and* bring the results of any such analysis to the attention of Spectrum's Senior Director, Global Quality (or its equivalent), and others as appropriate, to determine whether Spectrum has a reporting obligation to the CPSC;

4) Implement a formal "Request for Corrective Action" procedure whereby quality engineers and product safety managers can make a request to change a product based on various factors, including consumer complaints and incidents;

5) Maintain a "Product Hold Process" (or its equivalent) through which the manufacture and distribution of products can be placed on hold for design issues, manufacturing issues, performance issues, and safety issues, including any and all such products that may be returned to Spectrum by a warehouse, distributor, customer or otherwise to prevent the sale of recalled products; and

6) Ensure compliance training of responsible employees on CPSA and/or CPSC regulations, particularly with respect to section 15(b)'s reporting requirement under 15 U.S.C. § 2064(b)(3)-(4) and the prohibition of the sale of recalled products under 15 U.S.C. § 2068(a)(2)(B).

7) Defendant shall retain, at its own expense, an independent expert, who by reason of background, training and education is qualified to assist in reviewing and recommending changes, if necessary, to Spectrum's comprehensive safety program for CPSA compliance, with particular emphasis on compliance with the section 15(b) reporting requirement and procedures necessary to prevent the sale of recalled products.

a. The parties may have 90 days to agree upon an independent expert, or if the parties cannot reach agreement, for each party to designate one expert with whom the court will consult to identify a neutral expert.

   b. Following the retention of the neutral expert and that expert's review, Spectrum shall have 120 days to implement the recommendations made by that expert in good faith, unless within 30 days of receiving a recommendation, Spectrum files a written challenge in this court on the basis that it is unreasonable (in timeframe or otherwise) or overreaches the number or severity of defendant's past violations of the CPSA, in which case Spectrum need only implement that recommendation by further order of this court.

8) Compliance with ¶¶ 1–7 shall be deemed good faith compliance with this permanent injunction.

B. Defendant's motion to stay the permanent injunction pending appeal (dkt. #236) is GRANTED as to the seventh modification above, but DENIED in all other respects.

C. The clerk of court is directed to forward this Opinion & Order to the Seventh Circuit as a supplement to the record on appeal

Entered this 19th day of January, 2018.

                BY THE COURT:

                /s/

                _____
                WILLIAM M. CONLEY
                District Judge