IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

               Plaintiff,

v.

SPECTRUM BRANDS,

               Defendant.

OPINION & ORDER

15-cv-371-wmc

---

On October 3, 2017, the court entered a permanent injunction requiring Spectrum, among other things, to "maintain sufficient systems, programs, and internal controls to ensure compliance with the CPSA and the regulations enforced by the CPSC," to "implement appropriate improvements to its compliance programs . . . within 6 months," and to file "a notice indicating that improvements have been implemented." (Dkt. #235.) Defendant Spectrum then requested that any further enforcement of the permanent injunction be stayed pending appeal (*see* dkt. #236 at 2), arguing that the remainder of the injunction was "effectively an order requiring Spectrum to obey the law in the future." (Dkt. #237 at 9-10, 14.)[1] The government opposed the request to stay the permanent injunction, pointing out that Spectrum could instead seek clarification about its compliance. (Dkt. #239 at 4, 11.) Before the court could rule on the motion to stay, Spectrum filed a notice of appeal. (*See* dkt. #240.)

Recognizing that the permanent injunction may have "fall[en] short of what was required under Rule 65(d)(1)(B)&(C)," the court "direct[ed] Spectrum to provide written

---

[1] Spectrum also requested, and the government did not oppose, a stay without bond on the civil penalty imposed for failure to timely report. (*See* dkt. #236 at 1-2; dkt. #239 at 4.)

notice . . . detailing what specific improvements it has already made" and allowing the government the opportunity "to indicate its agreement or identify any shortcomings and propose specific alternative improvements." (Dkt. #243 at 4.) After considering the parties' submissions, the court clarified the permanent injunction by setting forth six specific requirements, "all of which Spectrum represent[ed were] already in place," and an additional, seventh requirement that Spectrum retain an independent expert to review and make recommendations on the company's safety program. (Dkt. #256 at 4-5, 8.) Because the case was already before the Seventh Circuit, this court imposed the six specific requirements already in place, but stayed the seventh because it "require[d] Spectrum to do more than simply maintain the status quo." (*Id.* at 8.)

In response to that order, the government sought a formal remand from the Seventh Circuit "to ensure that this [c]ourt possesses jurisdiction to alter the injunction" as contemplated (dkt. #257 at 2), which was granted (dkt. #258 at 1). Upon remand, this court then permitted defendant an opportunity to address the proposed independent-expert requirement (*see* dkt. #259 at 1).

Spectrum's opposition is basically that the court cannot incorporate the independent-expert requirement "unless the government has shown both that circumstances have materially changed since the entry of the permanent injunction last October and that the modification the government has proposed is suitably tailored to address those changes," arguing further that "[t]he government has not met its burden." (Dkt. #260 at 4.) This objection is odd indeed. As the government's response points out, this is not an instance where "simply . . . the plaintiff belatedly [came] up with a new idea."

2

(Dkt. #260 at 8.) Rather, the court only reconsidered the permanent injunction at Spectrum's urging as the enjoined party. Indeed, it was Spectrum that complained the initial permanent injunction lacked specificity, prompting the court to agree and determining that, combined with the already-implemented improvements, "[h]iring an outside consultant to review its procedures is a straightforward, specific way for Spectrum to ensure its good faith compliance with the permanent injunction," removing "the vagueness of the admonition to [simply] 'obey-the-law'" of which Spectrum complained. (Dkt. #256 at 7.) Thus, the court finds it appropriate to incorporate all seven clarifications elucidated in its January 19, 2018, order and the final judgment will be amended to read as follows:

IT IS ORDERED AND ADJUDGED that final judgment is entered in favor of plaintiff United States of America against defendant Spectrum Brands. Unless paid already, defendant is directed to pay civil penalties to plaintiff, the United States of America, in the amount of $1,936,675.00 on or before October 30, 2017. This amount represents a civil penalty owed to the United States pursuant to 15 U.S.C. § 2069 and is not compensation for actual pecuniary loss and, therefore is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. §523(a)(&).

No interest shall accrue on the ordered payment if timely made. In the event of any default in payment, the entire unpaid amount shall constitute a debt due and immediately owing to plaintiff and post-judgment interest shall be assessed from the date of this order until payment is made as set forth in 28 U.S.C. § 1961.

IT IS FURTHER ORDERED AND ADJUDGED that a Permanent Injunction pursuant to Federal Rule of Civil Procedure 65 is ENTERED under the following terms and conditions:

A. Defendant shall maintain sufficient systems, programs, and internal controls to ensure compliance with the CPSA and the regulations enforced by the CPSC including, without limitation, the section 15(b) reporting requirement under 15 U.S.C. §§ 2064(b)(3)-4) and the prohibition of the sale of recalled products under 15 U.S.C. §§ 2068(a)(2)(B).

B. Defendant shall, on or before October 13, 2017, disseminate copies of both the civil penalty and summary judgment opinions and orders (dkt. ##196, 234) by personal service or certified mail to each of its directors, officers, management-level employees, and in-house attorneys involved in the sale, offering for sale, manufacture, distribution in commerce, or importation into the United States of "consumer products" as defined in the CPSA, 15 U.S.C. § 2052(a)(5) (collectively "Associated Persons").

C. Defendant shall implement improvements to its compliance programs as required under subsection A as follows:

1. Maintain the position of Senior Director, Global Quality (or its equivalent) with qualifications and authority to monitor (and if necessary, enhance) Spectrum's policies to ensure future product quality and safety;

2. Regularly track product safety information, including product return

rates, call center data, and product "star" ratings by consumers on various websites, and evaluate that information to determine whether issues are being identified and appropriately handled;

3. Document calls and written communications regarding potential and actual incidents and injury information, collect products that are the subject of reports by consumers or retail partners of potential safety issues, analyze those products and bring the results of any such analysis to the attention of Spectrum's Senior Director, Global Quality (or its equivalent), and others as appropriate, to determine whether Spectrum has a reporting obligation to the CPSC;

4. Implement a formal "Request for Corrective Action" procedure whereby quality engineers and product safety managers can make a request to change a product based on various factors, including consumer complaints and incidents;

5. Maintain a "Product Hold Process" (or its equivalent) through which the manufacture and distribution of products can be placed on hold for design issues, manufacturing issues, performance issues, and safety issues, including any and all such products that may be returned to Spectrum by a warehouse, distributor, customer or otherwise to prevent the sale of recalled products;

6. Ensure compliance training of responsible employees on CPSA and/or CPSC regulations, particularly with respect to section 15(b)'s reporting

requirement under 15 U.S.C. § 2064(b)(3)-(4) and the prohibition of the sale of recalled products under 15 U.S.C. § 2068(a)(2)(B); and

7. Shall retain, at its own expense, an independent expert, who by reason of background, training and education is qualified to assist in reviewing and recommending changes, if necessary, to Spectrum's comprehensive safety program for CPSA compliance, with particular emphasis on compliance with the section 15(b) reporting requirement and procedures necessary to prevent the sale of recalled products.

    a. The parties may have 90 days to agree upon an independent expert, or if the parties cannot reach agreement, for each party to designate one expert with whom the court will consult to identify a neutral expert.

    b. Following the retention of the neutral expert and that expert's review, Spectrum shall have 120 days to implement the recommendations made by that expert in good faith, unless within 30 days of receiving a recommendation, Spectrum files a written challenge in this court on the basis that it is unreasonable (in timeframe or otherwise) or overreaches the number or severity of defendant's past violations of the CPSA, in which case Spectrum need only implement that recommendation by further order of this court.

8. Compliance with ¶¶ 1–7 shall be deemed good faith compliance with this permanent injunction.

D. Unlike paragraphs 1-6 above, implementation of paragraph 7 would go beyond the status quo, as paragraph 7 requires Spectrum to do more than simply maintain the status quo. As such, the court will continue to stay enforcement of that paragraph pending appeal or expiration of the time to appeal, whichever is later. Additionally, the court stays enforcement of the $821,675 civil liability attributable to Spectrum's failure to report.

E. This court will retain jurisdiction of this action for the purposes of construing, enforcing, or modifying this order and granting such additional relief as may be necessary or appropriate.

F. The United States may seek reasonable costs and attorney's fees upon succeeding in a suit to enforce this order.

Entered this 6th day of April, 2018.

> BY THE COURT:
>
> /s/
> _____
> WILLIAM M. CONLEY
> District Judge